IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

EVERGREEN MEDIA HOLDINGS, LLC    §
AND TONY DEROSA-GRUND,           §
                                 §
            Plaintiffs,          §
                                 §
VS.                              §    CIV. A. NO. H-14-1634
                                 §
THE SAFRAN COMPANY AND PETER     §
SAFRAN,                          §
                                 §
            Defendants.          §

**<u>OPINION AND ORDER OF TRANSFER</u>**

The above referenced cause, removed from Texas state court on

diversity jurisdiction[1] and alleging breach of contract and breach

of covenant of good faith and fair dealing,[2] and seeking damages

_____

[1] It is undisputed that for jurisdictional purposes both
Plaintiffs are citizens of Texas, while both Defendants are
citizens of California.

[2] Although the Court does not address the merits of the
case in deciding whether it has personal jurisdiction over Safran
and The Safran Company, for clarity here the Court observes that
under Texas law there are four elements for a claim of breach of
contract:  (1) an enforceable valid contract between the parties;
(2) performance by plaintiff of its contractual obligation; (3)
breach of the contract by the defendant; and (4) injury to
plaintiff caused by the breach.  *American Gen. Life Ins. Co. v.
Kirsch*, 378 Fed. Appx. 379, 383 (5th Cir. 2010); *Southwell v. Univ.
of the Incarnate Word*, 974 S.W. 2d 351, 354-44 (Tex. App.--San
Antonio 1998, pet. denied).
        Plaintiffs assert that "[u]nder Texas law, there is an
implied covenant of good faith and fair dealing in every contract
that neither party will do anything that will injure the right of
the other to receive the benefits of the agreement."   Orig.
Petition, #1-2 at p. 8.  The Court notes that the Texas Supreme
Court has declined to imply a general duty of good faith and fair
dealing in all contracts. *English v. Fisher*, 660 S.W. 2d 521, 522
(Tex. 1983)(opining that there is no general duty of good faith
and  fair  dealing  in  ordinary,  arms-length  commercial
transactions).  An exception is recognized where the parties have
certain "special relationships," e.g., the relationship between an
insured and insurer, principal and agent, joint venturers or
partners, in which case a duty of good faith and fair dealing may
arise based on trust or unequal bargaining power.  *Natividad v.*

and declaratory relief, is a dispute between movie producers over payment rights to a Hollywood horror movie, "The Conjuring," which was filmed in North Carolina. Pending before the Court is Defendants The Safran Company and Peter Safran's motion to dismiss for lack of personal jurisdiction under Fed. Rule of Civ. P. 12(b)(2) and, alternatively, motion to transfer to the Central District of California pursuant to 28 U.S.C. § 1404(a)(instrument #5).

After a careful review of the record and the applicable law, for the reasons stated below, the Court finds that it lacks personal jurisdiction over Defendants and that a transfer to the Central District of California under § 1404 is appropriate.

### Factual Allegations of the Original Petition (#1-2)

Plaintiffs Evergreen Media Holdings, LLC ("Evergreen") and Tony DeRosa-Grund ("DeRosa-Grund"), a motion picture producer, purchased the rights to case files of two paranormal investigators, Ed and Lorraine Warren, from which DeRosa-Grund wrote the story and developed the motion picture, "The Conjuring." On or around March 2010, Plaintiffs entered into an Option Quitclaim Agreement with New Line Productions, Inc. ("New Line"), pursuant to which New Line obtained from Plaintiffs an option on the rights to produce "The Conjuring" and a theatrical sequel or remake of it or additional films based on the Warrens' case files.

_____

*Alexsis, Inc.*, 875 S.W. 2d 695, 697–98 & n.5 (Tex. 1983), *citing Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W. 2d 165, 167 (Tex. 1987).

On or around March 31, 2010 Evergreen and New Line also entered into a Producer Loanout Agreement pursuant to which DeRosa-Grund would produce "The Conjuring." Under both agreements Plaintiffs were to be compensated by New Line with a percentage of the adjusted gross receipts of "The Conjuring," which turned out to be one of the most profitable movies of 2013.

While "The Conjuring" was being filmed, but before it was released, in or around February 13, 2012 DeRosa-Grund and Peter Safran ("Safran"), who is president and owner of The Safran Company, entered into an oral agreement in Montgomery County, Texas pursuant to which Defendants would provide customary producer services (e.g., securing writers, directors and other talent for and developing Plaintiffs' projects in the marketplace and obtaining financial sources, for ultimate sale and production) to Plaintiffs' motion picture products other than "The Conjuring," for which DeRosa-Grund would pay Safran fifty percent of the contingent compensation paid to Plaintiffs by New Line on "The Conjuring."

Nevertheless, claim Plaintiffs, not only did Safran not provide any producer services to Plaintiffs with respect to the other entertainment projects, but Defendants undermined Plaintiffs' efforts in the entertainment industry. Since Defendants did not provide consideration for the oral agreement, Plaintiffs insist that no valid and binding agreement exists between the parties. Even if it did, Plaintiffs contend that Safran breached the agreement and the implied covenant of good

faith and fair dealing by failing to provide the producer services relating to the other entertainment projects and by his actions undermining Plaintiffs' efforts. Therefore Plaintiffs claim they have no obligation to pay Safran any portion of the contingent compensation connected to "The Conjuring."

Furthermore New Line purportedly failed to pay the profit participation it promised to Plaintiffs.

## Applicable Law

Whether the court has personal jurisdiction over a defendant is a question of law subject to *de novo* review. *In re Chinese-Manufactured Drywall Products Liability Litig.*, 753 F.3d 521, 528-29 (5th Cir. 2014). When a defendant files a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.)(*citing Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)), *cert. denied*, 548 U.S. 904 (2006).[3] Personal jurisdiction must be determined on an individual basis for each defendant. *Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Best Little Promohouse in Texas, LLC v. Yankee*

---

[3] "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law . . . ." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). Where the facts are disputed, the party seeking to invoke the court's jurisdiction bears the burden of establishing sufficient contacts with the forum state by the nonresident defendant to invoke the court's jurisdiction. *Bullion v. Gillespie*, 895 F.2d 213, 216-17 (5th Cir. 1990).

*Pennysaver, Inc.*, No. 3:14-CV-1824-BN, 2014 WL 5431630, at *2 (N.D. Tex. Oct. 27, 2014). At the pretrial stage of litigation, if the district court does not conduct a hearing on personal jurisdiction, the plaintiff need only present a *prima facie* case of personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Felch v. Transportes Lar-Mex S.A. DE CV*, 92 F.3d 320, 325 (5th Cir. 1996); *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Proof by preponderance of the evidence is not required. *Johnston*, 523 F.3d at 609.[4] When a defendant disputes factual bases for

---

[4] As the Fifth Circuit explained in *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008),

> Ultimately, the plaintiff must show by a preponderance of the evidence that jurisdiction is proper. Often, the determination of whether this standard is met is resolved at trial along with the merits. This is especially likely when the jurisdiction issue is intertwined with the merits and therefore can be determined based on jury fact findings. In this situation it is often "preferable that [the jurisdictional] determination be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits." But this court has said that after a pretrial evidentiary hearing confined to the jurisdictional issue, where both sides have the opportunity to present their cases fully, the district court can decide whether the plaintiff has established jurisdiction by a preponderance of the evidence. [footnotes omitted]

The panel further opined, *id.* at 241,

> If the court determines that it will receive

personal jurisdiction, the district court may consider the record before it, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002)(*quoting Thompson v. Chrysler Motors Corp.*, 755 F.3d 1162, 1165 (5th Cir. 1985)), *cert. denied*, 540 U.S. 814 (2003); *Kelly Law Firm, P.C. v. An Attorney for You*, 679 F. Supp. 2d 755, 762 (S.D. Tex. 2009). The Court "'must accept the plaintiff's uncontroverted allegations, and resolve in [his] favor all conflicts between the facts contained in the parties' affidavits and other documentation'" for purposes of the *prima facie* case of personal jurisdiction. *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014), *quoting Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Nevertheless, the court is not required to credit conclusory allegations even if they are uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

The court had discretion whether to allow jurisdictional discovery. *Monkton Ins., 768 F.3d at 429,* citing *Davila v. U.S.*,

only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss. Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavit and supporting materials.

713 F.3d 248, 263-64 (5th Cir. 2013). As the party opposing dismissal and requesting jurisdictional discovery, the plaintiff bears the burden of showing that discovery is needed. *Id.* As recently opined by the district court in *National Surety Corp. v. Ferguson Enterprises, Inc.*, No. 3:13-CV-2045-M, 2014 WL 5472436, at *1 (N.D. Tex. Oct. 29, 2014),

> When seeking discovery on personal jurisdiction, a plaintiff must make a "preliminary showing of jurisdiction" before being entitled to such discovery. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). The decision to allow jurisdictional discovery is within the district court's discretion. *See id.* at 419. "[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)(citation omitted). A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction. *See Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, No. 4:11-cv-629-A, 2012 WL 104980, at *7 (N.D. Tex. Jan. 11, 1012)(*citing Kelly*, 213 F.3d at 855). A court is entitled to deny leave to conduct discovery where the movant fails to specify what facts it believes discovery would uncover and how those facts would support personal jurisdiction. *See id.; see also King v. Hawgwild Air, LLC*, No. 3:08-cv-153-L, 2008 WL 2620099, at *8 (N.D. Tex. June 17, 2008).

The court has discretion as to the type and amount of discovery it will allow, but unless there is a full and fair hearing, it should not act as a factfinder and must construe all disputed facts in favor of the plaintiff. *Walk Haydel*, 517 F.3d at 241. "When a district court makes factual determinations decisive of a motion to dismiss for lack of jurisdiction, it must give plaintiffs an opportunity for discovery and a hearing that is appropriate to the

nature of the motion to dismiss." *McCallister v. FDIC*, 87 F.3d 762, 766 (5th Cir. 1996).

Under the federal rules, except where a federal statute provides for broader personal jurisdiction, the district court's personal jurisdiction is coterminous with that of a court of general jurisdiction of the state in which the district court sits. *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001). A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers personal jurisdiction over that nonresident defendant and if the exercise of personal jurisdiction satisfies due process under the United States Constitution. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *citing Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007). The Texas long-arm statute, Texas Civil Practice and Remedies Code §§ 17.0421-.045,[5] extends

_____

[5] Section 17.042, the Texas long-arm statute, provides in relevant part,

> In addition to other acts that may constitute doing business, a nonres1dent does business in this state if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) commits a tort in whole or in part in this state; or (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Simply contracting with a Texas resident or communicating with him during the performance of the contract is not sufficient to subject a nonresident to personal jurisdiction in a Texas court.

jurisdiction to the limits of federal due process. *Schlobohm v. Schapiro*, 784 S.W. 2d 355, 357 (Tex. 1990); *Gonzalez v. Bank of America Ins. Servs., Inc.*, No. 11-20174, 2011 WL 6156856 *3 (5th Cir. Dec. 12, 2011), *citing Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008). Thus a plaintiff in a diversity action in federal court in Texas[6] need only demonstrate that (1) the defendant purposely availed himself of the benefits and protections of the forum state by establishing that the defendant had minimum contacts with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007).

Personal jurisdiction can be either specific or general jurisdiction. *Mink v. AAAA Develop., LLC.*, 190 F.3d 333, 336 (5th Cir. 1999). "Where [an individual] defendant 'has continuous and systematic general business contracts' with the forum state, the court may exercise 'general jurisdiction over any action brought

---

*Max Protetch, Inc. v. Herrin*, 340 S.W. 3d 878, 886 (Tex. App.-- Houston [14th Dist. 2011, no pet.), *citing Olympia Capital Assocs., LP v. Jackson*, 247 S.W. 3d 399, 417 (Tex. App.--Dallas 2008, no pet.), and *Credit Commercial de France, S.A. v. Morales*, 195 S.W. 3d 209, 220-21 (Tex. App.--San Antonio 2006, pet. denied).

[6] *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.").

- 9 -

against the defendant [regardless of whether the action is related to the forum contacts]." *Luv N' Care*, 438 F.3d at 469, *citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). *See also Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)("General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."), *cert. denied*, 531 U.S. 917 (2000). "[T]he minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992). An out-of-state defendant that merely does business with Texas businesses or customers will not be subject to general jurisdiction if it does not have a lasting physical presence in the state. *Best Little Promohouse*, 2014 WL 5431630, at *3, *citing MCI Telecommunications Corp.*, 197 F.3d 694, 717 (5th Cir. 1990). "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610.

Recently the Supreme Court opined that the appropriate consideration in determining general jurisdiction of a foreign corporation is whether the defendant's "'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*,

134 S. Ct. 746, 761 (2014), *quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation . . . the place of incorporation and principal place of business . . . ." *Id.* at 760, *citing Goodyear* at 2853-54. "It is therefore incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Services*, 768 F.3d at 432, *citing Goodyear*, 131 S. Ct. at 851, and *Helicopteros*, 466 U.S. at 411-12. It is undisputed that The Safran Company is a California corporation, organized and existing under the laws of California with its principal place of business in Beverly Hills, California 90210. #1, Notice of Removal at p.3.

A defendant's presence in Texas is not "continuous and systematic merely because it advertises in that state or nationally. *Brother of the Leaf, LLC v. Plastic Products Co., Inc.*, 2014 WL 3824209, at * (W.D. Tex. Aug. 1, 2014), *citing Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008), and *Bearry v. Beech Aircraft Corp.*, 818 F.3d 370, 376 (5th Cir. 1987). "[P]urchases and related trips, standing alone, are not a sufficient basis for a State's assertion of [general personal] jurisdiction." *Helicopteros*, 466 U.S. at 417.

If the defendant has relatively few contacts, the court may still exercise specific personal jurisdiction over that party if the suit "'arises out of' or is related to the defendant's

contacts with the forum." *Helicopteros*, 466 U.S. at 414 & n.8.
Thus in this action, Defendants' contacts with Texas must relate
to or arise from the alleged breach of contract and duty of good
faith and fair dealing. *Id.* "Although a nonresident's physical
presence within the territorial jurisdiction of the court is not
required, the nonresident generally must have 'certain minimum
contacts . . . such that the maintenance of the suit does not
offend 'traditional notions of fair play and substantial
justice.''" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014), *citing
International Shoe*, 326 U.S. at 316. "[T]he relationship must
arise out of contacts that the "defendant *himself'* creates with
the forum State." *Id.* at 1122, *citing Burger King Corp. v.
Rudzewicz*, 471 U.S. 462, 475 (1985). The plaintiff cannot be the
sole link between the defendant and the forum; instead the
defendant's conduct must constitute the necessary connection with
the forum state for specific personal jurisdiction over him. *Id.*
at 1122. The court must examine "the relationship among the
defendant, the forum, and the litigation." *Id.* at 1121, *citing
Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984), and
*Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

The Fifth Circuit has concluded that specific jurisdiction is
"a claim-specific inquiry: 'A plaintiff bringing multiple claims
that arise out of different forum contacts of the defendant must
establish specific jurisdiction for each claim.'" *McFadin*, 587
F.3d at 759, *quoting Seiferth v. Helicopteros Atuneros, Inc.*, 472
F.3d 266, 271 (5th Cir. 2006). Moreover, the Fifth Circuit has

established a three-step analysis for determining whether specific jurisdiction exists: "'(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there[7]; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts[8]; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'" *Seiferth*, 472 F.3d at 271, *quoting Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002). The minimum contacts review is fact-intensive and no single contact is decisive; "the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court" in the forum. The defendant 'must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third party.'''" *McFadin*, 587 F.3d at 759, *citing Luv N' Care*, 438 F.3d at 470 (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)),

---

[7] Purposeful availment requires a defendant to seek some benefit, advantage or profit by "availing" itself of the jurisdiction. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W. 3d 777, 785 (Tex. 2005).

[8] The litigation must also "result from the alleged injuries that 'arise out of or relate' to those activities." *Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.*, 815 S.W. 2d 223, 228 (Tex. 1991), *citing Burger King*, 471 U.S. at 472. For specific jurisdiction, there "must be a substantial connection" between the nonresident defendant's contacts with the forum state and the "operative facts of the litigation." *Guardian Royal*, 815 S.W. 2d at 229-33.

and *Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867, 871-72 (5th Cir. 1999)(*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).  Thus specific jurisdiction may not be based upon the mere fortuity that a plaintiff is a Texas resident. *Santander Consumer USA, Inc. v. Shults Ford, Inc.*, Civ. A. No. 3:11-CV-614-L, 2011 WL 2601520, *4 (N.D. Tex. June 30, 2011), *citing Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).  Mere foreseeability that a party might perform many of its duties in Texas, by itself, does not create personal jurisdiction, although it would support a finding of jurisdiction if it were combined with the fact that "the forum was 'clearly the hub of the parties' activities.'"  *Moncrief Oil*, 481 F.3d at 312-13.

"[M]erely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction."  *Hold Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987).  *See also Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004).  It is black letter law that communications between parties during contract negotiations, by themselves, are insufficient to support personal jurisdiction.  *Holt Oil*, 801 F.2d at 778.  "An exchange of communications in the course of developing and carrying out a contract . . . does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law."  *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007).  *See also Cardinal Health Solutions, Inc. v. St. Joseph Hosp. of Port Charlotte, Fla.*

*Inc.*, 314 Fed. Appx. 744, 745 (5th Cir. 2009); *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004).

Indeed, where the exchange of communications between Texas and another state, including extensive emails and telephone calls, rests on nothing except "the mere fortuity that [plaintiff] happens to be a resident of the forum," it is insufficient to establish specific jurisdiction. *MH Outdoor Media, LLC v. Am. Outdoor Advertising, LLC*, No. Civ. H-14-898, 2014 WL 4537959, at *3 (S.D. Tex. Sept. 10, 2014), *citing Holt*, 801 F.2d at 778, and *Freudensprung*, 379 F.3d at 344. Jurisdiction may not be based on the fortuity of one party residing in the forum state. *McFadin*, 587 F.3d at 760.

Once the plaintiff has established that the defendant has minimum contacts with the forum state, the burden shifts to the defendant to show that assertion of jurisdiction would be unfair. *Walk Haydel*, 517 F.3d at 245. In determining whether the exercise of jurisdiction is fair and reasonable, the court examines five factors: "'(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.'" *McFadin*, 587 F.3d at 759-60, *quoting Luv N' Care*, 438 F.3d at 473. If the plaintiff fails to establish the existence of minimum contacts with the forum state, the court need not reach the

question of whether personal jurisdiction would offend traditional notions of fair play and substantial justice. *Renoir v. Hantman's Associates, Inc.*, 230 Fed. Appx. 357, 360 (5th Cir. 2007).

The fiduciary shield doctrine protects officers of a corporation in their individual capacity from personal jurisdiction when he acts on behalf of his corporation. Generally under the "fiduciary shield doctrine," "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation[.]" *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985); *Fairchild v. Barot*, 946 F. Supp. 2d 573. (N.D. Tex. 2013)("With limited exceptions, the fiduciary shield doctrine prohibits a court from exercising personal jurisdiction over an individual based solely on jurisdiction over the company with which the individual is associated,"(*citing Stuart v. Spademan*). Although the Texas Supreme Court has not adopted the doctrine, intermediate appellate courts have used it to defeat general jurisdiction over a nonresident defendant. *Quality Leasing and Rental Holdings, LLC v. Mobley*, No. 13-14-00064-CV, 2014 WL 3738653, at * n.9 (Tex. App.--Corpus Christi June 19, 2014, pet. for review abated); *Urban v. Barker*, No. 14-06-00387-CV, 2007 WL 665118, at *5 n.7 (Tex. App.--Houston [14th Dist.] Mar. 6, 2007)(and cases cited therein). An exception is recognized where the individual is shown to have used the corporation as a mere alter ego, but there are no such allegations regarding Safran

here.  *Tabacinic v. Frazier*, 372 S.W. 3d 658, 669 (Tex. App.--
Dallas 2012, no pet.).[9]  The doctrine does not protect a corporate
officer from liability for his own tort, but there are no
allegations of tortious conduct against Safran.  *Ennis v. Loiseau*,
164 S.W. 3d 698, 707 (Tex. App.--Austin 2005, no pet.)

The Fifth Circuit has held that, as an alternative to
dismissal without prejudice, a federal court lacking personal
jurisdiction may transfer the case to another court under 28
U.S.C. § 1404(a), the venue transfer statute, if the transferee
court meets that statute's requirements, i.e., to any district or
division in which it could have been brought if the court finds
that transfer is in the interest of justice.  *Bentz v. Recile*, 778
F.2d 1026, 1027 (5th Cir. 1985); *Herman v. Cataphora, Inc.*, 730
F.3d 460, 466 (5th Cir. 2013).  The district court has broad
discretion to transfer a case under 28 U.S.C. 1404(a)[10] where the
moving party shows it is for the convenience of parties and
witnesses and in the interest of justice.[11]  *In re Volkswagen of*

_____

[9] An exception is when the corporation is the alter ego
of the individual officer (a facade for the individual officer's
interests and activities), when "courts attribute to the
individual the corporation's contacts with the forum state."
*Stuart v. Spademan*, 772 F.2d at 1198.

[10] Section 1404(a) provides, "For the convenience of
parties and witnesses, in the interest of justice, a district
court may transfer any civil action to any other district or
division where it might have been brought or to any district or
division to which all parties have consented."

[11] It is improper for the court to consider the
convenience of counsel, which is irrelevant, in reviewing a
transfer of venue under § 1404(a).  *In re Volkswagen AG*, 371 F.3d
201, 206 (5th Cir. 2004).

*America, Inc.*, 545 F.3d 304, 311 (5th Cir. 2008). Whether a civil action "'might have been brought' in the destination venue is determined by applying the general venue statute, 28 U.S.C. § 1391, which governs a plaintiff's choice of venue. Under § 1391(b),

A civil action may be brought in-

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

"[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." *In re Volkswagen*, 545 F.3d at 313.

The Fifth Circuit has adopted the private and public interest factors set forth in *Gulf Oil Corp. v. Gilbert*, a *forum non conveniens* case, and applied them to determine whether a transfer is for the convenience of the parties and witnesses and in the interest of justice under 28 U.S.C. § 1404(a). *In re Volkswagen*, 545 F.3d at 313 & nn.9 and 10 *(citing Humble Oil & Refining Co. v. Bell Marine Service, Inc.*, 321 F.3d 53, 56 (5th Cir. 1961)), *cert. denied*, 555 U.S. 1172 (2009). The moving party must show good

cause for the transfer. *Id.* at 314. "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* The private interest factors are "'(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 315.

  The public interest factors include "'(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Id.* These factors, while appropriate for most cases, are not exhaustive or exclusive, and none is dispositive. *Id.*

    Under § 1404(a) the court is not authorized to dismiss the case, as it is under 28 U.S.C. § 1406(a). *Id.* If the transferee court is not clearly more convenient, the court must defer to the plaintiff's choice of venue. *In re Volkswagen*, 545 F.3d at 315.

### Defendants' Motion To Dismiss or To Transfer

    Arguing that everything to do with "The Conjuring" occurred in California or North Carolina and that the sole connection with Texas is that Plaintiffs reside here, a fortuitous occurrence, Defendants, supported by Peter Safran's affidavit (Exhibit A), emphasize that they are citizens of California and they do not

have any substantial, continuous or systematic contact with Texas
for purposes of general jurisdiction.  Furthermore they do not do
business in Texas, have offices in Texas, own, lease or control
any real or personal property in Texas, do not maintain bank
accounts in Texas, have not paid any real or personal property
taxes in Texas, do not have a telephone listing in Texas, do not
have any employees or any agents in Texas, and do not promote or
advertise any of their services in Texas.  Peter Safran has made
four isolated visits to Texas over forty-eight years, each time in
response to an invitation.

Nor are Defendants subject to specific personal jurisdiction
in Texas because the only connection this case has to Texas is
that Plaintiffs reside here.  Plaintiffs' allegations of
jurisdiction are vague and conclusory.  The only allegation
potentially related to Texas is that Plaintiffs entered into an
oral agreement in Montgomery County, Texas, a legal conclusion
with no factual support and which Defendants insist is false; they
maintain that the agreement was negotiated while De-Rosa-Grund and
Peter Safran were in North Carolina.  Plaintiffs do not and cannot
identify any specific actions of Defendants that occurred in Texas
or that relate to the alleged agreement.

Alternatively, Defendants urge the Court to transfer this
case under 28 U.S.C. § 1404(a) to the Central District of
California, the judicial district in which they reside and where
The Safran Company has its principal place of business.  The
private interest factors favor transfer of this action:  Safran is

a resident of that district and The Safran Company's principal place of business is there. Safran's affidavit, Ex. A. There is easy access to sources of proof in California, including a related arbitration between New Line and DeRosa-Grund. Moreover if the case goes to trial experts may be necessary on compensation methods, legal issues, business models and other industry-specific practices unique to the film industry which are more plentiful in California than in Texas. Moreover most, if not all, potential third-party witnesses are located in the Central District of California, including the following who are not parties to the suit and not within the control of either party: Walter Hamada, a New Line executive based in Los Angeles; David Neustadter, a New Line executive based in Los Angeles; Carey Hayes, co-writer of "The Conjuring," based in Los Angeles; Chad Hayes, co-writer of "The Conjuring," based in Los Angeles; Craig Alexander, a New Line business affairs executive, based in Los Angeles; Paul Brooks, Gold Circle CEO, based in Los Angeles, who introduced Safran to DeRosa-Grund; and John Gatti, Plaintiffs' California counsel who was involved in the negotiations of the parties' relationship and the agreement at issue. In California they are amenable to service of process to secure their attendance, but not in Texas. Lastly, Plaintiffs will not be burdened by having to litigate in California, where they do business, where they have legal counsel,

and where they are already participating in the arbitration of a related dispute.[12]

Defendants urge that the public factors also support a transfer. Regarding court congestion, the Central District of California has 28 authorised active judgeships, the Southern District of Texas only 19. Furthermore the Southern District of Texas has ten times more vacant judgeships. The Southern District of Texas has almost five times the number of criminal cases, which take precedence, as the Central District of California. Moreover, this case is focused on and will affect the film-making industry, which is centered in the Central District of California. Asserting that this Court will likely decide that California law applies to this action, Defendants urge that transfer is appropriate. Since Plaintiffs seek a declaratory judgment based on a contractual claim, the dispute can be decided in either state.

### Plaintiffs' Opposition (#9)

Insisting Defendants have misrepresented and/or omitted material facts and with a supporting declaration from DeRosa-Grund (#9-1), Plaintiffs spend a considerable amount of time emphasizing that they reside and work within Texas, including on "The Conjuring," that Defendants were fully aware that they did, that

---

[12] Plaintiffs respond that neither Safran nor Defendants are parties to the California arbitration, which is between New Line and Warner Brothers Entertainment. #9 at p.14 n.1.

DeRosa-Grund was a "hugely successful motion picture producer" and televison producer who had the connections and reputation to find professional writers or studio producers for his projects without the help of Safran, that DeRosa-Grund by himself made the key decisions involving "The Conjuring" and agreements for future projects, that DeRosa-Grund had only been to California three times in the last twelve years, and that "The Conjuring" was not based on "reports" of the Warrens, but on DeRosa-Grund's dealings and discussions over twenty-three years with the Warrens about their case files, including the "Perron Farmhouse" Case File, from which DeRosa-Grund created and wrote the original story and treatment for "The Conjuring."

While these matters may relate to the merits of Plaintiffs' claims, the Court notes that none is relevant to whether this Court has personal jurisdiction over Safran and The Safran Company based on their contacts with Texas. Thus the Court addresses only those claims of Plaintiffs that are material to the issue of personal jurisdiction.

Plaintiffs allege that after Safran learned from Paul Brooks, president of Gold Circle Films,[13] about DeRosa-Grund's story and treatment for what would become "The Conjuring" and other potential motion picture projects, Safran "tracked Mr. DeRosa-Grund down in Texas to try to get himself linked to one or more of Mr. DeRosa-Grund's other projects" and "purposefully interjected

---

[13] DeRosa-Grund had originally proposed the project with Brooks that he ultimately entered into with Safran.

himself into the proceedings in Texas." #9 at pp. 7, 11. As evidence Defendants submit Ex. 3 to #9, a copy of an email exchange between Safran and DeRosa-Grund.[14] According to

---

[14] Plaintiffs claim that this email exchange (#9-4 or Ex. A) "show[s] that Mr. Safran reached out to Mr. DeRosa-Grund in Texas to try to glom onto plaintiffs' projects and future successes." #9 at p.8. The Court notes that the email actually reflects that DeRosa-Grund initiated this email exchange. Moreover DeRosa-Grund's email, identifies its subject matter as "newsreel footage of Babe Ruth-Jackie Mitchell" and raises the issue of an agreement about working together on movie projects almost as a second thought. Indeed DeRosa-Grund's email appears to invite and mold Safran's response. DeRosa-Grund's email to "Peter" reads,

> We actually managed to get a copy of some of the original newsreel footage from 1931 of Jackie Mitchell striking out Babe Ruth. My IT guys are converting it to streaming media and uploading it to our servers. I'll send you the link as soon as they finish.
>
> On another note, I just wanted to let you know that we are pulling out of the deal on The Conjuring with Gold Circle as I have some personal issues with Adam Mehr. I hope that does not preclude us from working on some of the other projects we discussed yesterday. Cheers.

In response, Safran wrote,

> That is amazing. I can't wait to see footage--must be fantastic.
>
> As for The Conjuring--I am sure that if you are pulling out there must be a good reason for it. However, I think this is a unique project and I suspect that I could be very helpful in terms of setting it up. I have strong relationships with all the financiers and studios that would make sense for a project of this nature and would love to be the person championing it.
>
> Best,

Plaintiffs, DeRosa-Grund did not reach an oral agreement with Safran to pay Safran part of his "back-end compensation from "The Conjuring" in exchange for Safran's services on future entertainment projects being developed in Texas until after DeRosa-Grund returned to Texas from North Carolina. DeRosa-Grund's attorney, John Gatti, then prepared a Notice of Irrevocable Authority ("NOIA") (Ex. 5), which DeRosa-Grund and Safran executed and which memorialized the agreement. After the agreement was reached, Safran introduced Plaintiffs to writers Chad and Carey Hayes, with whom DeRosa-Grund, from Texas, subsequently worked to refine the story and treatment for the movie. DeRosa-Grund, who claims that he alone held the right to the underlying intellectual property, asserts that he, by himself, chose New Line as the motion picture studio with which he would negotiate for "The Conjuring.".

The key contact of Defendants with Texas claimed by Plaintiffs involves DeRosa-Grund's personal bankruptcy proceedings in 2009 in the United States Bankruptcy Court for the Southern District of Texas, Case Number 4:09-bk-33264, presided over by the Honorable Wesley Steen. To satisfy the demands of potential motion picture studios, including New Line, to make and release "The Conjuring," DeRosa-Grund had to clear the chain of title by obtaining approval of the terms of the agreement with New Line by both the bankruptcy trustee and the bankruptcy court in Texas and

by having the bankruptcy trustee, on behalf of the bankruptcy estate, enter into the contract with New Line giving the bankruptcy estate's interest in the life rights of the Warrens in exchange for a payment from New Line to the bankruptcy estate. Plaintiffs insist that "Safran's involvement in the Bankruptcy Court proceeding was not minimal." #9 at p.8. They assert that Safran directly participated in negotiating in Texas a deal with New Line and the bankruptcy trustee, which months later produced a "Deal Memo" relating to the underlying rights to "The Conjuring," which was signed by the parties, including Safran. The Deal Memo (Ex. A to Judge Steen's Order, Ex. 4), with Safran's knowledge, was then submitted to and approved by the trustee and Judge Steen and became an Order of the Bankruptcy Court (Ex. 4, Order), and subsequently became the basis for long form co-producer agreements entered into by Plaintiffs and Defendants with New Line for co-production of "The Conjuring."

Plaintiffs further assert that Defendants "continuously interact[ed] by telephone and email-over hundreds of times-with Plaintiffs in Texas as part of their co-production activities." #9 at p. 23.

Should the Court question its personal jurisdiction over Defendants, Plaintiffs request leave to obtain jurisdictional discovery and a continuance of the Court's review of the motion to dismiss.

To Plaintiffs' contention that Defendants are subject to personal jurisdiction because they contracted with and did business with Texas residents, Defendants respond that Plaintiffs' residence in Texas cannot bestow personal jurisdiction over Defendants. It is the latters' purposeful contacts with Texas, not Plaintiffs' that matter. Moreover, as evidenced, Plaintiffs were actively pursuing connections to California for "The Conjuring" before Defendants came along and that whether Defendants may have sent the first email or initiated the first phone call is of no import.

So, too, is DeRosa-Grund's personal bankruptcy insufficient to support personal jurisdiction over Safran and The Safran Company; even a person making a formal appearance in a bankruptcy proceeding does not extend jurisdiction over that individual in later litigation when the appearance is insignificant to the bankruptcy proceedings. *Bergenholtz v. Cannata*, 200 S.W. 3d 287, 295-96 (Tex. App.--Dallas 2006, no pet.)(California attorney made a formal special appearance protesting lack of personal jurisdiction)("The fact that the bankruptcies were pending in Texas . . . was fortuitous rather that the result of [the Defendant's] 'purposeful availment' of the benefit of Texas law.").[15] Here Safran did not make an appearance in DeRosa-Grund's

---

[15] Plaintiffs object that *Bergenholtz* is distinguishable because in it the California attorney did not deliberately inject herself into the proceedings and did not negotiate or execute any agreements in the proceedings. Here, knowing that without

bankruptcy proceeding, but only signed a contract related to a business deal in California involving production of a movie in California.

That Defendants entered into an oral contract with Plaintiffs for future production of other theatrical motion pictures is not sufficient to confer jurisdiction over them because it is Defendants', not Plaintiffs', contacts with Texas that are relevant. Defendants insist that their contacts with Texas were not of the nature and quality [16] that would subject them to

---

agreement from all involved parties, the bankruptcy trustee would not release the bankruptcy estate's claims on "The Conjuring" property rights, Defendants participated in negotiations with the Trustee in Texas to create the Deal Memo, which they knew would be filed in the Texas Bankruptcy Court and become an enforceable order. According to Plaintiffs, Safran "willingly 'ran' into a Texas Court when it suited his purposes on the very same deal and property that is the subject of the instant action" and cannot credibly claim that he had no idea he would be hauled into a Texas court. Furthermore the Deal Memo was not for production of a movie in California, but for a movie anywhere; in fact, "The Conjuring" was filmed in North Carolina.

[16] This Court observes that in *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268-69 (5th Cir. 2981), the Fifth Circuit opined,

> The essence of due process cases, such as *International Shoe* and *Hanson v. Denckla*, 357 U.S. 235 . . . (1958), is that the contact with the forum state must not be fortuitous. When a defendant purposefully avails himself of the benefits and protection of the forum's laws by engaging in activity in the state or engaging in activity outside the state that has reasonably foreseeable consequence in the state, maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice. Considerations such as the quality, nature, and extent of the activity in the forum from activities outside it, and the relationship between the cause of

jurisdiction in this Court. *Lansing Trade Group, LLC v. 3B Biofuels GmbH & Co., KG*, 612 F. Supp. 2d 813, 826-27 (S.D. Tex. 2009). Nor is Plaintiffs' residence in Texas relevant. Reiterating that Defendants' only connection to Texas was the fortuitous fact that Plaintiffs reside there, Defendant emphasize that, regardless, their performance of the oral agreement would have occurred in California. Although place of performance of the contract is a "weighty consideration," "[i]f . . . the forum plaintiff's decision to perform its contractual obligation within its own forum state is totally unilateral, it cannot be viewed as purposeful on the part of the nonresident and the weight is necessarily diminished." *Command-Aire Corp. v. Ontario Mechanical Sales and Service, Inc.*, 963 F.2d 90, 94 (5th Cir. 1992).

Finally, Defendants argue that Plaintiffs are not entitled to jurisdictional discovery. They fail to identify any question of fact that could alter the specific jurisdiction analysis, but base their allegations on facts already known to both parties. They also failed to identify any basis for general jurisdiction discovery. Alternatively, contend Defendants, venue should be transferred. The only objection Plaintiffs make is that it would be inconvenient for them to litigate this dispute in California, despite the fact that they are already arbitrating a case against

---

action and the contacts, relate to whether it can be said that the defendant's actions constitute "purposeful availment. In other words, a defendant's activities in relation to the state indicate he is on notice that he could be haled into its courts.

New Line in California and that nearly all of the individuals they name in their response are located in California.

## Plaintiffs' Surreply (#18)

Without requesting leave to file their Surreply, Plaintiffs insist that they have made a colorable case for personal jurisdiction (largely repeating their previous contentions, which the Court does not reiterate) and that the Court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiffs any factual conflicts." *Lansing Trade Group*, 612 F. Supp. 2d at 819. They insist that "it is indisputable that: (i) Defendants deliberately sought out Plaintiffs in Texas in order to attempt to convince Plaintiffs to enter into a long-term agreement with Defendants; (ii) Defendants deliberately injected themselves in Mr. DeRosa-Grund's bankruptcy; (iii) Defendants entered into an agreement with Plaintiffs whereby Defendants knew they would be working with Plaintiffs in Texas; (iv) Defendants routinely and continuously communicated with Plaintiffs in Texas; and (v) Defendants routinely and continuously communicated with Plaintiffs in Texas concerning critical aspects of their business relationship." #18 at p.5. Plaintiffs maintain that they were looking for business relationships throughout the United States and around the world, that they were not shopping the market in California and never traveled to California but remained in Texas, and were not looking to do business with Defendants because Plaintiffs did not need or want them and would

not have entered a business relationship with Defendants had Safran not contacted Plaintiffs in Texas.

Regarding their request for jurisdictional discovery, Plaintiffs state that they "anticipate[] that evidence will be gathered showing that, among other things: (i) Defendants entered into a business relationship and/or agreements with Texas resident and citizen, Armie Hammer, to serve as the lead actor and executive producer in connection with the motion picture titled 'Mine'; and (ii) Defendants have other contacts with Texas, including contracts and/or relationships with other Texas residents and citizens, including, but not limited to, Gene William's [sic] who played a role in Defendants' motion picture titled 'The Starving Games.'" #18 at p.9.

Finally, Plaintiffs maintain that venue is not proper in California. They conclusorily claim public and private interest factors do not support a change in venue, but do not explain why. As for the arbitration in which Plaintiffs are participating in California, Plaintiffs state they have never conceded personal jurisdiction in that proceeding and are participating only because the arbitrator indicated that they would be defaulted if they do not.

## Court's Decision

The existence of personal jurisdiction over a defendant is a question of law. *In re Chinese-Manufactured Drywall Products Liability Litig.*, 753 F.3d 521, 528-29 (5th Cir. 2014). Because the Court did not hold an evidentiary hearing, Plaintiffs bear the

burden of establishing a *prima facie* case of personal jurisdiction over Defendants. The Court accepts Plaintiffs' uncontroverted allegations as true, but not conclusory assertions without factual support and not necessarily Plaintiffs' interpretation of the law and its application to those alleged facts.

As a threshold matter in the personal jurisdiction analysis, the Court observes that Plaintiffs fail to distinguish between the two Defendants. Indeed they have failed to specify any facts regarding The Safran Company and its contacts with Texas. While Plaintiffs rely heavily on the Deal Memo, the negotiations for which Safran participated in Texas, the Court observes that it is signed in his individual name with no indication in the body or in his signature that he did so on behalf of The Safran Company. #9, Ex. A to Ex. 4 (Judge Steen's Order). The NOIA between Assignor Evergreen and Assignee The Safran Company provides that any payment to The Safran Company under the Producer Loanout Agreement between New Line and Evergreen with respect to the Warren files project should be paid to The Safran Company at its Los Angeles, California address. #9, Ex. 6.

Plaintiffs fail to establish a *prima facie* case of general jurisdiction over Safran and The Safran Company in Texas because they do not show that Defendants' contacts with Texas were continuous, systematic and substantial. *Burger King*, 471 U.S. 475. They fail to controvert Safran's affidavit stating that Defendants had no employees, no agents, no office, no lease or control of any real or personal property in Texas, do not maintain

bank accounts in Texas, have not paid any real or personal property taxes in Texas, do not have a telephone listing in Texas, and do not promote or advertise any of their services in Texas. Nor have Plaintiffs provided any other evidence that would demonstrate that Defendants have continuous, systematic or substantial contacts with Texas.

As for specific jurisdiction, the Court has examined Plaintiffs' factual allegations to determine whether the quality, nature, and extent of Defendants' activities in Texas and the relation of those activities to Plaintiff's suit is sufficient to make a *prima facie* case that Defendants purposely availed themselves of the benefits, privileges, and protections of the laws of Texas to the extent that they could reasonably anticipate being haled into a Texas court.

In essence Plaintiffs argue first that Defendants established minimum contacts with Texas by contracting with Texas Plaintiffs, thus satisfying the long-arm statute permitting service of process on nonresidents who have engaged in business in Texas. Tex. Civ. Prac. & Rem. Code § 17.042. Second, they claim that Safran's interjection of himself into DeRosa-Grund's personal bankruptcy proceedings, participation in negotiations resulting in the Deal Memo, and execution of that document in Texas provide sufficient contacts with Texas to support personal jurisdiction over him.

Regarding the contract between Plaintiffs and Defendants, the Court agrees with Defendants that Plaintiffs incorrectly focus on their own contacts with Texas when it is Defendants' contacts that

are relevant to the jurisdictional inquiry. Furthermore, as discussed previously, the mere fact that a nonresident defendant enters into a contract with a Texas resident plaintiff does not, by itself, support the exercise of personal jurisdiction by a Texas court over the nonresident. *Colwell Realty Investments, Inc. v. Triple T Inns, Inc.*, 785 F.2d 1330, 1334 (5th Cir. 1986); *Stuart*, 772 F.2d at 1192-93. Nor do communications (including emails and telephone calls) in developing or carrying out the contract constitute adequate purposeful availment of the benefits and protection of Texas law. *Holt Oil*, 801 F.2d at 778. *See SMK Painting Co. v. Flournoy Constr. Co., LLC*, No. Civ. A. 3:99-CV-0916-G, 1999 WL 1017779, at *4 (N.D. Tex. Nov. *4, 1999)("The Fifth Circuit has held that negotiating, executing, and even partially performing an isolated contract with a resident of the forum will not, without more, constitute the minimum contacts necessary to confer jurisdiction."), *citing Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996), in turn *citing Stuart*, 772 F.2d at 1193, and *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1-26, 1029 (5th Cir. 1983), *cert. denied*, 466 U.S. 962 (1984). Defendants' performance or nonperformanc of the contract did not take place in Texas. As for Safran's participation in DeRosa-Grund's bankruptcy proceedings, in which he did not make an appearance but only joined in negotiations for the Deal Memo (Ex. A to #9-5)(another agreement subject to the same standards as the agreement at issue between Plaintiffs and Defendants), the ultimate purpose of the

memo was to clear the title by giving the bankruptcy estate's interest in the life rights of the Warrens to New Line for future film project in exchange for a payment from New Line to the bankruptcy estate, in other words, a condition precedent for the movie studio's participation in Plaintiffs' future film projects. The Deal Memo is tangential to the instant suit, especially because Plaintiffs claim that Defendants never provided the promised producer services and thus was not owed money by New Line. Moreover, courts should examine the totality of circumstances to determine if the defendant purposefully availed itself of the forum state or merely engaged in contacts that were random, fortuitous or attenuated in nature. *Burger King*, 471 U.S. at 475. The fact that Safran signed the Deal Memo in Texas is an isolated factor in the totality of the facts. In sum, the Court finds that Plaintiffs also fail to establish a *prima facie* case of specific personal jurisdiction over Safran and The Safran Company. Thus the Court does not reach the question whether the exercise of personal jurisdiction over Defendant would comport with the "traditional notions of fair play and substantial justice. *Int'l Shoe*, 326 U.S. at 316.

Plaintiffs have asked for a continuance and jurisdictional discovery if the Court finds they have not met their burden of establishing a *prima facie* case of personal jurisdiction. However, the Court finds they have also not met the standard for such discovery. They have not described what facts they expect to

discover and how that information would support jurisdiction, but only vaguely pointed to possible previous agreements with two Texas residents, Armie Hammer and Gene Williams, which and who are unrelated to this litigation. Two isolated agreements with other individual will not suffice to establish general jurisdiction over Safran and The Safran Company. As noted, an out-of-state defendant that merely does business with Texas businesses or customers will not be subject to general jurisdiction if the defendant does not have a lasting presence in Texas. *MCI Telecommunications*, 917 F.3d at 717. Moreover vague, conclusory assertions that do not indicate the extent or frequency of contacts are insufficient to support general jurisdiction. *Johnston*, 523 F.3d at 610. For the same reasons that Plaintiffs fail to make a preliminary showing of specific personal jurisdiction over Safran and The Safran Company on their breach of contract cause of action, they fail to do show how they can establish personal jurisdiction over Defendants based on unrelated contracts with Armie Hammer and Gene Williams.

Because the Court concludes that it lacks personal jurisdiction over Safran and The Safran Company, it addresses Defendants' motion to transfer under § 1404(a) as an alternative to dismissal. While Defendants have addressed in detail the public and private factors that support a transfer to the Central District of California, where this suit could have been brought since all the defendants are residents of California, for the convenience of the parties and the witnesses and in the interest

of justice, Plaintiffs have merely conclusorily denied them. Thus the Court finds that Defendants have clearly met their burden and that this case should be transferred pursuant to 28 U.S.C. § 1404(a).

Accordingly, finding that Plaintiffs have failed to meet their burden of establishing a *prima facie* case of personal jurisdiction over Safran and The Safran Company in Texas, the Court

ORDERS that this case is TRANSFERRED pursuant to 28 U.S.C. § 1404(a) to the United States District Court in the Central District of California.

**SIGNED** at Houston, Texas, this __18th__ day of _December_, 2014.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE